MONAGHAN, MONAGHAN, LAMB & MARCHISIO, LLP
28 West Grand Avenue
Montvale, New Jersey 07656
(201) 802-9060 PHONE/(201) 802-9066 FAX

*Attorneys for Plaintiffs*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

MITCHELL BERK, JEROLD BLATT,
MICHELE S. BLATT, MITCHELL
BLATT, NAT BLATT, MINDY CHERMAK,
SUSAN GREENBAUM, ALEX KANNER,
JOSEPH KANNER, WILLIAM LOCANTRO,
THELMA MORRIS, JOSEPH NICOLICH,
VINA NICOLICH, ANDREW QUENTZEL,
NORMAN RICH, JOAN SAVASTA,
RANDY SCHLEGER, DAVID SCILLIERI,
ESQ., MARIE C. SELSER, ROBERT C. SELSER,
ESQ., RONALD SPAULDING, AND
JOHN AND JANE DOES,

    Plaintiffs,
     v.

HMC INTERNATIONAL, LLC,
ROBERT M. MASSIMI, BRET
A. GREBOW, JAIME L. MASSIMI f/k/a
JAIME ELLIOTT, JAMIE S. MASSIMI,
GREGORY MASSIMI, RICHARD MASSIMI,
FREDERICK MASSIMI, AMELIA MASSIMI,
ROBERT GREBOW,
BRUNO DIBELLO & CO, LLC,
ESSEX-MORGAN LLC
AND SCHONFELD SECURITIES,
LLC F/K/A BROADWAY TRADING
AND JOHN DOES 1-10,
      Defendants.

**COMPLAINT AND DEMAND
FOR JURY TRIAL**
<u>Civil Action</u>  07CV 181 (JLL)

1

Plaintiffs by their attorneys, Monaghan, Monaghan, Lamb & Marchisio, LLP, for their Complaint herein against the Defendants allege upon knowledge, or upon information and belief[1] where appropriate, as follows:

### INTRODUCTION AND FACTUAL BACKGROUND

1. This case involves a fraud in connection with a day-trading hedge fund named HMC International L.L.C.,("HMC", and sometimes referred to as the "Fund") which was nothing more than a classic Ponzi scheme, operated by certain of the named defendants, who both individually and jointly, directly and indirectly, engaged in acts, practices and in a common course of conduct, designed to defraud Plaintiffs by the use of deceptive practices and by misrepresenting and omitting material facts in connection with the investments made by Plaintiffs therein.  Other defendants, many of whom are insiders and related by blood or marriage to certain of the defendants, as hereinafter alleged, materially aided and abetted the wrongful conduct or, as a result of transfers that were fraudulent and intended to defeat creditors' claims, received from HMC or from the defendants directly, proceeds

---

[1] The facts alleged herein rely in part upon the Securities and Exchange Commission's ("SEC") pleadings in the case brought against certain of the named defendants under 05 CIV. 10673 U.S.D.C. S.D.N.Y..

of the Plaintiffs' investments for little or no
consideration.

2.    The HMC investors including Plaintiffs invested an
aggregate of $12,900,000.00, which after redemptions and
other withdrawals by investors of approximately $5.4
million and the collapse of the HMC hedge fund left a net
loss of approximately $7.5 million dollars due to sham
investments and looting of the Fund's assets for the
personal benefit of the Fund's principals.

### JURISDICTION - VENUE

3.    Jurisdiction and venue in this action are
predicated upon Sections 12, 17(a) and 22(a) *et seq.* of the
Securities Act of 1933; 15 U.S.C. §§ 77q(a) & 77v(a);
Section 10(b), 20, and Section 27 of the Securities
Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b);
(78t)(a), (78t-1),  Rule 10b-5 thereunder, 17 C.F.R.§
240.10b-5, and the Rules promulgated thereunder; and 28
U.S.C. Sections 1331 and 1337 and the pendent jurisdiction
of this court relating to New Jersey and New York State
securities law claims, Common law claims and consumer fraud
claims are asserted under both the New York General
Business Law (Sec. 349 and 359 *inter alia*) and New Jersey
statutes (N.J.S.A. 56:12-1 *et seq.*) which provide for

3

attorney's fees and exemplary damages in appropriate situations.

4.   *In personam* jurisdiction in this action is also predicated upon business activities and transactions conducted within the District of New Jersey.  The means and instrumentalities of interstate commerce were used and employed in connection with the wrongful conduct hereinafter alleged.

5. Venue is proper in this District pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because certain of the transactions, acts, practices, and courses of conduct constituting violations of the federal securities laws occurred within this District.

## RELIEF SOUGHT

6. This action seeks money damages, punitive and exemplary damages, attorney's fees, injunctive relief, rescission of any transactions found to be fraudulent conveyances and also seeks pre-judgment relief by way of attachment of the assets of certain defendants for among other reasons security for any relief and judgment which will be ultimately rendered in this matter and for purposes

4

of rescinding any transactions found by the Court to be
fraudulent conveyances for less than fair consideration.

## PARTIES

### PLAINTIFFS

7.  Plaintiffs repeat, reiterate and reallege each and
every allegation contained in paragraphs 1 through 7 as if
set forth verbatim herein.

8.  Plaintiff MITCHELL BERK ("BERK") is a citizen and
resident of the State of New York with a business address
of 184-17 Union Turnpike, Fresh Meadows, New York 11366.
He invested and has lost not less than $22,457.64 in one
account and $87,604.67 in another account at HMC.

9.  Plaintiff JEROLD BLATT ("J. BLATT") is a citizen
and resident of the State of New York with a business
address of 184-17 Union Turnpike, Fresh Meadows, New York
11366.  He invested and has lost not less than $22,223.83
in one account at HMC, not less than $67,628.26 in another,
and not less than $33,687.54 in yet a third account at HMC.

10.  Plaintiff MICHELE S. BLATT ("M.S. BLATT") is a
citizen and resident of the State of New York residing at 5
Scallop Avenue, East Hampton, New York 11937.  She invested
and has lost not less than $109,623.35 in one account at

HMC, and not less than $99,962.41 in a shared account with Mindy Chermak at HMC.

11.  Plaintiff MITCHELL BLATT ("M. BLATT") is a citizen and resident of the State of New York residing at 41 Villas Circle, Melville, New York 11747. He invested and has lost not less than $234,725.12 in one account and not less than $507,648.24 in another account at HMC.

12.  Plaintiff NAT BLATT ("N. BLATT") is a citizen and resident of the State of New York residing at 41 Villas Circle, Melville, New York 11747.  He invested and has lost not less than $120,624.89 in one account at HMC.

13.  Plaintiff MINDY CHERMAK ("CHERMAK") is a citizen and resident of the State of New York residing at 5 Scallop Avenue, East Hampton, New York 11937. She invested and has lost not less than $99,962.41 in a shared account with Michele Blatt at HMC.

14..  Plaintiff SUSAN GREENBAUM ("GREENBAUM") is a citizen and resident of the State of New York residing at 13 Manors Drive, Jericho, New York 11753.  She invested and has lost not less than $29,962.12 in one account at HMC.

15.  Plaintiff ALEX KANNER ("A. KANNER") is a citizen and resident of the State of New York residing at 397 Daub Avenue, Hewitt, New York 11557. She invested and has lost

not less than $35,875.69 in one account in care of Joseph Kanner at HMC.

16.  Plaintiff JOSEPH KANNER ("J. KANNER") is a citizen and resident of the State of New York residing at 397 Daub Avenue, Hewitt, New York 11557.  He invested and has lost not less than $67,520.88 in one account at HMC.

17.  Plaintiff WILLIAM LOCANTRO ("LOCANTRO") is a citizen and resident of the State of New York with an address of One Cross Island Plaza, Suite Rosedale, New York 11422.  He invested and has lost not less than $1,000,000.00 in one account at HMC.

18.  Plaintiff THELMA MORRIS ("MORRIS") is a citizen and resident of the State of Florida with a mailing address care of MITCHELL BERK, 184-17 Union Turnpike, Fresh Meadows, New York 11366.  She invested and has lost not less than $127,121.80 in one account and not less than $29,684.49 in another at HMC.

19. Plaintiff JOSEPH NICOLICH ("J. NICOLICH") is a citizen and resident of the State of New York residing at 22 Elm Street, Lynbrook, New York 11563.  He invested and has lost not less than $71,779.92 in one joint account with VINA NICOLICH at HMC.

20.   Plaintiff VINA NICOLICH ("V. NICOLICH") is a citizen and resident of the State of New York residing at 22 Elm Street, Lynbrook, New York 11563.  She invested and has lost not less than $71,779.92 in one joint account with JOSEPH NICOLICH at HMC.

21.   Plaintiff ANDREW QUENTZEL ("QUENTZEL") is a citizen and resident of the State of New York residing at 415 East 54th Street, Apt. 26C, New York, N.Y. 10022. He invested and has lost not less than $235,218.60 in one account at HMC.

22. Plaintiff NORMAN RICH ("RICH") is a citizen and resident of the State of New York residing at 3366 Park Avenue, Wantagh, New York 11793.  He invested and has lost not less than $86,773.52 in one account at HMC.

23.   Plaintiff JOAN SAVASTA ("SAVASTA") is a citizen and resident of the State of New York residing at 132 Champlain Avenue, Staten Island, New York 10306. She invested and has lost not less than $28,502.32 in one account at HMC.

24.   Plaintiff RANDY SCHLEGER ("SCHLEGER") is a citizen and resident of the State of Florida residing at 250 S. Ocean Boulevard, Apartment 2A, Boca Raton, Florida

8

33432-6201.   He invested and has lost not less than $102,000.00 in one account at HMC.

25.   Plaintiff DAVID SCILLIERI, ESQ. ("SCILLIERI") is a citizen and resident of the State of New Jersey with an address of 406 Route 46 East, Elmwood Park, New Jersey 07407.   He invested and has lost not less than $51,359.06 in one account at HMC.

26.   Plaintiff MARIE C. SELSER ("M. SELSER") is a citizen and resident of the State of New Jersey with an address of 118 East Allendale Road, Allendale, Saddle River, New Jersey 07458.   She invested and has lost not less than $305,212.56 in one account and not less than $119,897.69 in an IRA account at HMC.

27.   Plaintiff ROBERT C. SELSER, ESQ. ("R. SELSER") is a citizen and resident of the State of New Jersey with an address of 118 East Allendale Road, Allendale, Saddle River, New Jersey 07458. He invested and has lost not less than $341,305.41 in an IRA account at HMC.

28.   Plaintiff RONALD SPAULDING ("SPAULDING") is an citizen and resident of the State of New Jersey with an address of 8 Marnier Court, Manchester, New Jersey 08759. He invested and has lost not less than $30,552.80 in one account at HMC.

9

**DEFENDANTS**

29.   Defendant HMC International, LLC ("HMC") is or was a New Jersey corporation with its principal place of business located at 50 Chestnut Ridge Road, Montvale, New Jersey 07645.   The HMC fund was originally based in Paramus, NJ but later moved to Manhattan in New York City and still later in May of 2004, the Fund moved to Montvale, NJ. Defendant HMC was operated and controlled by Defendants ROBERT M. MASSIMI and BRET A. GREBOW who were the Funds' designated "members" [HMC, ROBERT M. MASSIMI, BRET GREBOW and ESSEX-MORGAN LLC may sometimes be referred to collectively as the "**HMC Defendants**"].

30.   Defendant ROBERT M. MASSIMI ("MASSIMI") is a citizen and resident of the State of New Jersey residing at 110 East Allendale Road, Saddle River, New Jersey 07458.

31.   Upon information and belief, Defendant BRET A. GREBOW ("GREBOW") is thirty years of age and believed to be a citizen and resident of the State of New York living in New Rochelle, New York at the present time. GREBOW is or was a registered representative holding a Series 7 License from the National Association of Securities Dealers ["NASD"] a self-regulating organization authorized by

statute and regulations to monitor the activities of member firms and representatives for the protection of the public.

32.   Defendant JAIME L. MASSIMI a/k/a JAIME ELLIOTT ("ELLIOTT") is a citizen and resident of the State of New Jersey residing at 110 East Allendale Road, Saddle River, New Jersey 07458. Elliott is or was married to MASSIMI and was in joint title with him, but upon information and belief is now the sole titled owner of the above premises located in Saddle River, New Jersey as a result of a transfer in or about October, 2005 for little or no consideration.

33.   Defendant JAMIE S. MASSIMI is the former wife of defendant MASSIMI and was the transferee of MASSIMI's interests in real property located in New Jersey.  These properties included 28 Holly Road, Upper Saddle River, New Jersey which was transferred to her on August 11, 2005 for a stated consideration of less than $1,000 at a time when MASSIMI was transferring assets to avoid claims and creditors including the Plaintiffs.  In November of 2005, MASSIMI transferred his ownership interest in 74 Twilight Road, Bayhead, New Jersey to his former wife Jamie [as opposed to Jaime-his current wife] also for a stated

11

consideration of less that $1,000 and also to defeat or hinder creditors such as the Plaintiffs.

34. Upon information and belief, Defendant GREGORY MASSIMI, a relative of ROBERT MASSIMI, residing in New Jersey invested an indeterminate sum and withdrew $613,053.87, from the HMC fund, $513,053.87 of which was withdrawn in 2005.

35. Upon information and belief, Defendant RICHARD MASSIMI, a relative of ROBERT MASSIMI, residing in New Jersey, invested an indeterminate sum and withdrew $107,662.00 in 2003.

36. Upon information and belief, Defendant FREDERICK MASSIMI, a relative of ROBERT MASSIMI, residence unknown, invested an indeterminate sum and withdrew a total of $91,340.78, withdrawn in 2004 and 2005.

37. Upon information and belief, Defendant AMELIA MASSIMI, a relative of ROBERT MASSIMI, residence unknown, invested an indeterminate sum and withdrew $25,569.32 in total in 2004 through 2005.

38. Defendant ROBERT GREBOW, a relative of BRET GREBOW, residence unknown, invested an indeterminate sum and withdrew $157,627 from 2002 through 2004, and an additional $ 40,112.27 in 2005, totaling $197,739.27.

39.   Defendant BRUNO DIBELLO & CO, LLC ("BD&C") is a New Jersey corporation, licensed to practice as accountants in the State of New Jersey, with its principal place of business at 785 Totowa Road, Totowa, New Jersey 07512. BD&C provided accounting services including tax returns and K-1 forms for the investors in HMC and preformed services for MASSIMI directly and also issued reports in connection with their work for HMC which reports were furnished to investors with the  full knowledge of BD & C that investors such as the Plaintiffs would rely upon them and give them credence.

40. Defendant ESSEX-MORGAN LLC, was another hedge fund operated by Robert M. MASSIMI, in New York, N.Y. into which at least $700,000 had been transferred from HMC with an account balance of just under $200,000 at the end of 2004. Robert MASSIMI eventually discontinued its operations and transferred all remaining assets to HMC.

41. Defendant SCHONFELD SECURITIES, LLC ("SCHONFELD") f/k/a Broadway Trading is upon information and belief an NASD registered Firm has or had a place of business at 280 Park Avenue, New York, New York 10017.  SCHONFELD provided brokerage clearing services for the defendants in the years 2004 and 2005.

13

## SUBSTANTIVE FACT ALLEGATIONS

### A. THE FUND SET-UP AND FRAUD AB INITIO

42. The HMC "hedge" fund was established in 2002 by
MASSIMI and GREBOW.  Its investment style as touted to the
Plaintiffs was claimed to be investing in a limited group
of securities with a "day trading strategy" in which all
positions would be liquidated and withdrawn from the market
every evening.  This strategy supposedly avoided or hedged
against, after hours risks. This "hedge" coupled with
trading in select equities allegedly balanced the risks of
day trading.

### B. INVESTMENTS IN HMC

43. After direct or indirect solicitation by the
defendants, approximately eighty (80) investors which
included the Plaintiffs relied upon materially false
representations as set forth hereafter and those on a
Website established by MASSIMI and GREBOW and invested and
entrusted approximately $12.9 million dollars in HMC
starting in or about 2002.  These funds were in the nature

14

of trust funds to be used and applied by the Fund for the benefit of the Plaintiffs and the other investors.

### C. AFFIRMATIVE MISREPRESENTATIONS AND BY OMISSION

44.  Investors including the Plaintiffs were led to believe by MASSIMI and GREBOW and HMC through oral and written public and private statements that the HMC Fund had expert and honest traders and investment strategies which would avoid the risks of trading losses and that actual trading to accomplish the objective of generating profits would occur and that the funds entrusted to the HMC defendants would be professionally and legally managed by defendants. Further investors including the Plaintiffs were led to believe that the trading and investment activities of HMC Fund were conducted and monitored in a professional and businesslike manner. Among the false and fraudulent statements were puffed and exaggerated claims designed to mislead, many of which were reported in self-aggrandizing news articles planted or encouraged by the HMC defendants. Examples of these include the following:

a) In a Wall Street Journal article entitled "With The Market Up Wall Street High Life Bounces Back Too – Chartered Jets, A Wedding in Versailles and Fast Cars to Help Forget Bad Times", GREBOW misrepresented to the world

15

the nature of HMC's business and its success.  He
represented that he was able now with the success of his
company to treat himself to a new Lamborghini and that he
no longer had to take cheap flights on Jet Blue Airways but
instead could charter his own flights.

b)  In order to solicit investors, MASSIMI used his
position to misrepresent the nature of risk involved with
HMC, the investment strategy, his performance and his role
as supervisor.  MASSIMI accomplished this through spoken
word, media interviews for various Wall Street
publications, and HMC's website.

c) He professed that the fund's traders were
mathematicians who used trading strategies based on an
incredible amount of technical research, which was untrue.
The only person who in fact ever did any trading at all was
GREBOW.  Incidentally, GREBOW was neither a mathematician
nor a college graduate.

d) MASSIMI's repetition of these low risk
representations were also made in newsletters which he sent
to investors.  The purpose of all of these representations
was to mislead investors into thinking that HMC was a bona
fide hedge fund operated by professionals and that their
money would safely appreciate in value.

e)   MASSIMI also published false and misleading annual performance returns for the years 2001 through 2004 on HMC's website.  These included reports of a 68% return for 2001, a 70% return for 2002 and a 30% return for 2003 and 2004, all of which were total falsehoods.

f)   MASSIMI made other misrepresentations including assuring investors that he was supervising GREBOW's trading, when in fact he wasn't.  He also told investors that the fund had between $20 million to $25 million dollars of assets under management while in fact it had much less, never having taken in more than $12.9 million.

g)   GREBOW also misrepresented the funds performance to investors and confirmed to them the status of the firms' active trading and profitability, and reported fictitious returns.

h) GREBOW additionally misrepresented the funds performance in the February 2004 Wall Street Journal article claiming that returns in 2003 were 40% when in fact they were in the negative.

i) In April 2005 MASSIMI arranged for two new articles to be published in the Wall Street Transcript and Buy Side Magazine.  MASSIMI used this opportunity to inflate the performance of HMC in the hopes of attracting more

17

investors. This sort of activity follows the classic Ponzi format in which new investor money is acquired in the hopes of placating old investors so that the scam can continue.

j) GREBOW manufactured and fabricated trading account statements for HMC which he sent to MASSIMI who in turn prepared monthly statements for investors, which showed these false monthly gains.

### D. GREBOW'S CHECKERED AND CRIMINAL PAST

45. The official record of the NASD reveals that GREBOW, over a relatively short period of time, while in his twenties and lacking a college degree, had been an employee and associated with seven or more brokerage and investment firms beginning in 1995. Over his short career he moved from firm to firm; and in several instances customer complaints were lodged against him alleging conversion.

46. Most significantly, GREBOW was charged with a felony possession of a forged instrument, which charge was downgraded to disorderly conduct. All of these wrongs were actions showing a lack of fidelity and trustworthiness, qualities particularly necessary when dealing with other peoples' money in a fiduciary relationship.

18

47.  MASSIMI had to know of GREBOW's checkered past and nonetheless sought to and did align himself with GREBOW.

### E. THE SHORT LIFE AND COLLAPSE OF THE HMC FUND

48.  Although the Fund was supposed to trade actively and generate profits for the investors, as represented by MASSIMI and GREBOW, in fact there was little or no trading and likewise little or no profit to distribute. The defendants MASSIMI and GREBOW enticed new investors to place funds with them and used those fresh funds to pay themselves and to pay some redemptions and so-called "profits" to investors lulling them into a false belief that the Fund was genuine.

49.  The HMC Fund collapsed in 2005 in a typical Ponzi free fall when it had no profits, its funds had been looted and certain investors made withdrawals from the Fund.  All of the the defendants, especially MASSIMI and GREBOW, had used the Fund as their personal piggy banks but the Fund could no longer  meet demands for redemptions.

50.  Upon information and belief, when the Fund was collapsing, MASSIMI and GREBOW then protected themselves and alerted their family members who made massive

19

withdrawals from the fund and thus were preferred to the detriment of Plaintiffs.

### F    FALSIFICATION OF RECORDS

51.   GREBOW manufactured and fabricated trading account and profit and loss statements for HMC which he sent to MASSIMI who in turn prepared and circulated monthly statements for investors, which showed false monthly gains.

### G.   USE OF MISREPRESENTATIONS TO FRAUDULENTLY INDUCE INVESTORS

52.   In order to solicit investors GREBOW misrepresented to the world the nature of HMC's business and its success in the Wall Street Journal.

53.   In order to solicit investors MASSIMI used his position to misrepresent and downplay the nature of the risk involved with HMC, the investment strategy, his performance and his role as supervisor.  He used every opportunity when presented with media interviews to bolster HMC's position in investors' minds.

54.   MASSIMI also published false and misleading annual performance returns for the years 2001 through 2004 on HMC's website, and possibly in 2005 as well.

55.   GREBOW also misrepresented the funds performance to investors and confirmed to them the status of the firms' active trading and profitability, and reported fictitious returns. (See Paragraph 44, *supra*).

56.   Between 2002 and 2004 MASSIMI sent investors' funds to GREBOW, and yet he did not establish any sort of monitoring procedure or act in any way as a supervisor concerning GREBOW's trading and use of the funds.   Even when he became aware of the misappropriations of fund assets, he continued to send investors' funds to GREBOW.

### H. NEW FUNDS WERE USED TO PAY OFF OLD INVESTORS

57.   MASSIMI continued his advertising efforts to recruit more money for the fund.   MASSIMI continued to inflate the performance of HMC in the hopes of attracting more investors.   This sort of activity follows the classic Ponzi format in which new investor money is acquired in the hopes of placating old investors so that the scam can continue.

21

## I.   THE AMOUNTS OF EMBEZZLED FUNDS

58.   Upon information and belief, approximately $7.5 million dollars was either lost or converted by MASSIMI and GREBOW to their own account, a conversion or theft in the form of falsified profits, lavish expenses and purchases such as a $160,000 Lamborghini automobile bought by GREBOW, trips to Europe, extensive renovations to MASSIMI'S house at 110 E. Allendale Road, in Saddle River, NJ, lavish parties and rent for an apartment in New York City for JAIME L. MASSIMI.

59.   MASSIMI and GREBOW operated the fund as a Ponzi scheme from the outset in every respect.  They were both integral to the fraudulent scheme.

60.   From 2002 until 2004, Robert M. MASSIMI compensated himself lavishly to the tune of $1,187,031.45 as his personal share of falsified profits.  Bret GREBOW was not far behind, filling his personal coffers to the tune of $984,408.55.   Additionally, the two rewarded themselves with expense accounts that burned through $659,697.64 in the same three year period.

61. From 2002 through 2004, MASSIMI and GREBOW also withdrew phony or inflated capital contributions to the tune of $566,427 for Mr. MASSIMI and $324,680 for Mr.

GREBOW.  Robert MASSIMI also withdrew an additional
$533,267.13 for his own use in 2005.  Bret GREBOW withdrew
an additional $105,778 in 2005.

## J.  ATTEMPTS TO HIDE ASSETS BY FRAUDULENT CONVEYANCES

62.  MASSIMI attempted to protect and conceal his
assets from Governmental authorities and disgruntled
investors shortly after the SEC began its investigation in
2004 and 2005.

63.  On August 11, 2005, Robert MASSIMI gave his 50%
share of the house on 28 Holly Road to JAMIE S. MASSIMI,
his ex-wife. The transfer was recorded on September 28,
2005.

64.  On October 2, 2005, JAIME L. MASSIMI opened a new
brokerage account at Merrill Lynch.  She is Robert
MASSIMI's current wife and has the same phonetic first name
as his ex-wife, but with a different spelling.

65.  On October 3, 2005, Robert MASSIMI deposited 1.5
million dollars from the Fund into his wife's new brokerage
account.

66.  MASSIMI then transferred $100,000 from that
account to a law firm representing HMC International LLC,

23

effectively using other people's money to pay his legal fees.

67.  MASSIMI then made two transfers from that account of $50,000.00 each to joint accounts held by him and his wife on November 18 and November 22, 2005.

68.  In November of 2005, Robert MASSIMI also transferred his 50% ownership of the 74 Twilight Road, Bayhead, New Jersey, property to his ex-wife, JAMIE S. MASSIMI, with a deed recorded on November 11, 2005.

69.  Mr. MASSIMI's current address is 110 East Allendale Road, Saddle River, New Jersey.  The house is in his current wife's name Jaime Leigh MASSIMI since on or about October, 2005.

70.  The transfers by Defendant Robert MASSIMI shifted the ownership or legal title of his assets to others, and were intended to hide these assets from creditors for little or no consideration, which equitably renders them void as fraudulent transfers.

71.  None of the above transfers were for valid consideration.  An attachment of the properties pending the litigation of this suit is necessary to preserve these assets for the Plaintiffs who were defrauded by MASSIMI through HMC International LLC.

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS HMC, MASSIMI, GREBOW AND ESSEX-MORGAN LLC (the HMC DEFENDANTS) FOR COMMON LAW FRAUD**

72.   Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 71 as if set forth verbatim herein and incorporate by reference paragraphs 1 through 71 above.

73.   The foregoing fraudulent scheme was intended to and did accomplish its end.   Plaintiffs relied on the representations made by the Defendants in good faith and without knowledge of their fraud.

74.   The HMC Defendants, directly and indirectly, singly or in concert, engaged in acts, practices and courses of dealing that constituted common law fraud *in factum* and fraud in the inducement.

75.   The HMC Defendants made misrepresentations to potential and actual investors that were false as to the nature of investments.

76.   The HMC Defendants made false representations as to income generated from investments as well as projections based on false data. These false representations were

knowingly made to investors to induce them to stay in the fund and to encourage more investments.

77.   These falsehoods were material as they were the key inducement that created investor appeal.  The HMC Defendants knew of the falsity of the representations, and or ignored the truth or should have known that they were falsehoods, as they knew or should have known of the lack of substance behind the investment schemes when they made the false representations to the investor Plaintiffs.

78.   HMC Defendants intended that the Plaintiffs/investors act on these falsehoods and actually invest in their company in reliance thereon.  They knew or should have known that the investor Plaintiffs were ignorant of the truth as to the nature of the investments, because the Defendants had so craftily and convincingly lied.

79.   The false representations were knowingly made by the use of verbal representations by both MASSIMI and GREBOW to investors, as well as through media publications, newsletters, mailings and the internet in such a way that Plaintiffs had good reason to rely on the misleading representations.

26

80.  The Plaintiffs and investors were ultimately damaged therefrom by the losses incurred approximating $7,500,000.00.  The scheme was a classic Ponzi, promising large returns in a short time with no true investment vehicle in existence capable of generating those promised returns.  In effect, funds from new investors were used to meet withdrawals of exiting investors and to provide funds for MASSIMI and GREBOW.

81.  As a result of the foregoing, Plaintiffs have been damaged for which they are entitled to and demand compensatory damages, treble damages, punitive damages and attorneys' fees.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS HMC, MASSIMI, GREBOW, AND ESSEX-MORGAN LLC (the HMC DEFENDANTS) FOR VIOLATIONS OF (SECTION 12(2))OF THE SECURITIES ACT OF 1933**

82.  Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 81 as if set forth verbatim herein and incorporate by reference paragraphs 1 through 81 above.

83.  This action, among other things, arises from and relates to the purchase and sale of investments and securities.  The transactions involve the use and instrumentality of interstate commerce, including but not

27

limited to, the U.S. mail and telephones and wire transmission facilities.

84.   Defendants, at all relevant times, or through agents, transacted business in this State by the use of the means and instrumentalities of interstate commerce by the forgoing activities.

85.   Defendants herein violated the Securities Act of 1933, 15 USC, Section 77(e), et seq., and specifically Section 12 of that statute.  The Defendants violated the statute by the use and means of communications in interstate commerce or the mails directly or indirectly, and oral statements in offering and selling a security to the Plaintiffs through untrue statements of material facts and omission to state facts necessary in order to make the statements made by them, not misleading in light of the circumstances in which they were made.

86.   Plaintiffs could not have known of any such untruths and omissions and a direct result thereof, suffered loss and damages as alleged herein.  Plaintiffs hereby seek rescission of the transactions in question, together with the other relief sought herein.

87.   Plaintiffs seek damages, attorneys' fees and costs on this Count.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS HMC, MASSIMI, GREBOW, AND ESSEX-MORGAN LLC (the HMC DEFENDANTS) FOR FRAUD IN THE OFFER OR SALE OF SECURITIES IN VIOLATION OF SECTION 17(a) OF THE SECURITIES ACT

88.  Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 87 as if set forth verbatim herein and incorporate by reference paragraphs 1 through 87 above.

89.  The HMC Defendants, and each of them, by engaging in the conduct described above, directly or indirectly, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails:

a. with scienter, employed devices, schemes, or artifices to defraud, or were reckless in not knowing that the representations set forth herein were false and misleading;

b. obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

29

    c. engaged in transactions, practices, or courses of

      business which operated or would operate as a fraud or

      deceit upon the purchaser.

    90.   By engaging in the conduct described above, each of

the HMC Defendants violated, and unless restrained and

enjoined will continue to violate, Section 17(a) of the

Securities Act, 15 U.S.C. § 77q(a).

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANTS HMC, MASSIMI, GREBOW, AND ESSEX-MORGAN LLC (the HMC DEFENDANTS) FOR FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES IN VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10B-5 THEREUNDER

    91.   Plaintiffs repeat, reiterate and re-allege each and

every allegation contained in paragraphs 1 through 90 as if

set forth verbatim herein and incorporate by reference

paragraphs 1 through 90 above.

    92. The HMC Defendants, and each of them, by engaging in

the conduct described above, directly or indirectly, in

connection with the purchase or sale of a security, by the

use of means or instrumentalities of interstate commerce,

of the mails, or of the facilities of a national securities

exchange, with scienter, or were reckless in not knowing

that the representations set forth herein were false and
misleading:

   a. employed devices, schemes, or artifices to defraud;
   b. made untrue statements of a material fact or omitted
      to state a material fact necessary in order to make
      the statements made, in the light of the circumstances
      under which they were made, not misleading; or
   c. engaged in acts, practices, or courses of business
      which operated or would operate as a fraud or deceit
      upon other persons.

   93. By engaging in the conduct described above, each of
the HMC Defendants violated, and unless restrained and
enjoined will continue to violate, Section 10(b) of the
Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5
thereunder, 17 C.F.R. § 240.10b-5.

**AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANTS
HMC, MASSIMI, GREBOW AND ESSEX-MORGAN LLC (the HMC
DEFENDANTS) FOR A COMMON LAW FRAUD AND CONSPIRACY**

   94.  Plaintiffs repeat, reiterate and reallege each
and every allegation contained in paragraphs 1 through 93
as if set forth verbatim herein and incorporate by
reference paragraphs 1 through 93 above.

31

95.   At all relevant times, the HMC Defendants conspired between and among themselves to withhold from the Plaintiffs the true facts regarding the handling of investment monies and securities, all in an effort to reap financial benefits for themselves to the detriment of Plaintiffs.

96.   Plaintiffs relied on the false and fraudulent representations, which induced them to make the subject investments and were thereby damaged.

97.   Plaintiffs seek compensatory damages with respect to their investments, including interest, attorneys' fees, costs and punitive damages.

**AS AND FOR A SIXTH CAUSE OF ACTION AGAINST THOSE DEFENDANTS JOHN AND JANE DOE FOR AIDING AND ABETTING EITHER THE INITIAL FRAUD OR THE WRONGFUL TRANSFER OF ASSETS**

98.   Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 97 as if set forth verbatim herein and incorporate by reference paragraphs 1 through 97 above.

99. The HMC Defendants, and each of them, by engaging in the conduct described above, defrauded the plaintiffs who suffered damages as a result.  Upon information and belief, the HMC Defendants were assisted in accomplishing

the fraud and the transfer of assets to defeat the claims of Plaintiffs by other of the defendants who shall be identified in the course of discovery in this action.

100. The defendants herein referenced were assisted in their wrongdoing, either knowingly or in a recklessly wanton manner, by the each other and possibly other parties JOHN and JANE DOE who were aware of, or should have been aware of, the wrongful conduct and breaches of fiduciary duty by the referenced defendants.  By engaging in the conduct described above, each of the other defendants violated, and aided and abetted the other, and substantially contributed and assisted in the primary wrong and fraud perpetrated by the HMC Defendants.

**AS AND FOR AN SEVENTH CAUSE OF ACTION AGAINST DEFENDANTS ROBERT M. MASSIMI, BRET A. GREBOW, JAIME L. MASSIMI f/k/a JAIME ELLIOTT, JAMIE S. MASSIMI, GREGORY MASSIMI, RICHARD MASSIMI, FREDERICK MASSIMI, AMELIA MASSIMI, AND ROBERT GREBOW, FOR AN ORDER OF ATTACHMENT ON PERSONAL AND REAL PROPERTY**

101.  Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 100 as if set forth verbatim herein and incorporate by reference paragraphs 1 through 100 above.

33

102. Pursuant to N.J.S.A. §§ 2A:15-42 and 2A:26-2, Issuance of attachments, the facts entitle Plaintiffs to an order of attachment and an order of arrest before judgment in a civil action against any properties in which the defendants named in this *ad damnum* clause either owns or has an interest in, including the real property identified in paragraphs numbered 63, 68 and 69 *supra,* being 28 Holly Road, Upper Saddle River, New Jersey, 74 Twilight Road, Bayhead, New Jersey, and 110 East Allendale Road, Saddle River, New Jersey, respectively. As to such property, the Court should issue a *capias ad respondendum* in an action founded upon contract, express or implied, as amounts are due to Plaintiffs from defendants, and upon information and belief the defendants have or may have attempted to move or transfer assets out of the jurisdiction, or may have fraudulently concealed assets, and may have fraudulently created and/or incurred the debts owed to Plaintiffs.

## AS AND FOR A EIGHTH CAUSE OF ACTION AGAINST DEFENDANT HMC AND ESSEX-MORGAN LLC FOR BREACH OF CONTRACT

103. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 102 as if set forth verbatim herein and incorporate by reference paragraphs 1 through 102 above.

34

104. Plaintiffs entered into an investment contract with the defendants HMC and or ESSEX-MORGAN LLC herein, hoping to earn profits.

105. Instead, Defendants HMC and or ESSEX-MORGAN LLC breached the agreement by failing to invest monies, by taking unwarranted fees, by taking expenses in excess of those allowable, and otherwise by fraudulently embezzling funds deposited in good faith by Plaintiffs into what they believed were legitimate investment hedge funds.

106. Plaintiffs seek damages for breach of contract, restitution damages, consequential damages, attorneys' fees and costs on this Count.

## AS AND FOR A NINTH CAUSE OF ACTION AGAINST BRUNO DIBELLO & CO, LLC, FOR NEGLIGENCE

107. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 106 as if set forth verbatim herein and incorporate by reference paragraphs 1 through 106 above.

108. The Defendant BD&C owed a duty of care to disseminate complete, accurate and truthful information to Plaintiffs in connection with the sale, issuance, and dissemination of investments offered by HMC. While the HMC Defendants pursued a fraudulent scheme by making false

representations of fact to the Plaintiffs as described
herein, defendant BD&C failed to fulfill their duty to
disclose material facts set forth above which could have
exposed the fraud to the Plaintiffs.

109.  The accounting firm BD&C had a duty to the
Plaintiffs to exercise due care in preparing the
partnership tax returns, and sending or allowing to be sent
to Plaintiffs K-1's which falsely represented the
performance of the Fund, the income (or lack thereof)
earned by Plaintiffs and the reportable income attributable
to Plaintiffs' investment returns.  Said Defendant thereby
at least negligently aided, abetted and assisted the HMC
Defendants, in disseminating false information to
Plaintiffs and other investors creating a false impression
and representation that the said Fund was profitable,
stable and above all solvent.  BD&C knew or should have
known that HMC financial statements and Plaintiff's K-1s
were false and were being disseminated to the Plaintiffs,
and that these Plaintiffs relied upon them as proof that
the Fund was real and not a sham operation.

110.  The Defendant BD&C failed to honor their
obligations by negligently violating their duties of full,

36

fair and complete disclosure to persons or entities which invested in the fund.

111. Said Defendant knew or should have known that said Plaintiffs and other investors, unaware of the fraud and falsehoods disseminated to them, would rely to their detriment on documents, disclosures and representations made by said Defendant in the issuance and sale of securities related to the investments in the Fund.

112. Plaintiffs have been damaged by the loss of capital and the opportunity cost of not investing in a legitimate fund, i.e. lost gains as reflected in the various stock indexes during the period of investments, and therefore seek all appropriate relief at law including but not limited to restitution, rescission, expectancy damages including equitable and provisional remedies and all other applicable remedies deemed appropriate by this Honorable Court.

**AS AND FOR AN TENTH CAUSE OF ACTION AGAINST DEFENDANTS HMC, MASSIMI, GREBOW and ESSEX-MORGAN LLC, (the HMC DEFENDANTS) FOR UNFAIR, UNCONSCIONABLE AND DECEPTIVE TRADE PRACTICES AND CONSUMER FRAUD IN VIOLATION OF N.J.S.A. 56:8-1, et seq. [AS TO NEW JERSEY RESIDENT PLAINTIFFS] AND NEW YORK'S GENERAL BUSINESS LAW AS TO NEW YORK PLAINTIFFS**

113. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 112

as if set forth verbatim herein and incorporate by reference paragraphs 1 through 112 above.

114.   The practices, acts, policies and course of conduct, as described above, of the HMC Defendants and the other Defendants on this Claim were intended to induce, and did induce, Plaintiffs to invest money into HMC and or ESSEX-MORGAN LLC.

115.   Defendants' practices, acts, policies and course of conduct, as described above, violated New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.* ("CFA") and also the provisions of New York's Consumer Fraud Statute.

116.   The aforementioned conduct is and was deceptive, false, fraudulent  and constitutes an unconscionable commercial practice in that the HMC Defendants, and the other defendants on this Claim, by the use of false or deceptive statements, and or knowing intentional or negligent omissions, misrepresented and/or concealed the true nature of the dealings at the fund, and the fact that said fund was in reality a scam, only operating to wrongfully and or negligently divest, defraud and/or embezzle funds by unsound practices, negligent practices and/or creating a classic Ponzi scheme.

38

117.   As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiffs have suffered an ascertainable loss and have been damaged as alleged herein, and are entitled to recover their actual damages, including restitution, as well as punitive and/or trebled damages to the extent permitted by law, and lastly reasonable attorney's fees.

**AS AND FOR A ELEVENTH CAUSE OF ACTION AGAINST HMC, MASSIMI, GREBOW, ESSEX-MORGAN LLC (the HMC DEFENDANTS)AND SCHONFELD SECURITIES,LLC F/K/A BROADWAY TRADING   FOR AN ACCOUNTING AND PRESERVATION OF EVIDENCE AND ASSETS**

118.   Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 117 as if set forth verbatim herein and incorporate by reference paragraphs 1 through 117 above.

119.   The Plaintiffs and all investors in the Fund are entitled to an accounting as to all their invested monies in the Fund from defendants in charge of or in possession of these assets or who benefited therefrom.   Plaintiffs demand said accounting based on all applicable principles of law and equity.

120.   Each of the Defendants named on this cause of action has received funds and assets which in equity belong to the plaintiffs and must be directed to account for all

monies and proceeds received from HMC and the HMC

Defendants.

## AS AND FOR A TWELFTH CAUSE OF ACTION AGAINST DEFENDANTS HMC, MASSIMI, GREBOW, AND ESSEX-MORGAN LLC (the HMC DEFENDANTS) FOR BREACH OF FIDUCIARY DUTY

121.   Plaintiffs repeat, reiterate and reallege each

and every allegation contained in paragraphs 1 through 120

as if set forth verbatim herein and incorporate by

reference paragraphs 1 through 120 above.

122.   The Defendants owed a fiduciary duty as trustees

in care of the invested assets of the Plaintiffs and other

investors to prevent the wasting of assets through

negligence, conversion, theft, improper trades, improper

business expenses and all other forms of fraud.

123.   By virtue of said breach of fiduciary duty,

Plaintiffs have suffered injury and seek damages herein.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION AGAINST DEFENDANT BRUNO DIBELLO & CO., FOR PROFESSIONAL NEGLIGENCE AND MALPRACTICE

124.   Plaintiffs repeat, reiterate and reallege each

and every allegation contained in paragraphs 1 through 123

as if set forth verbatim herein and incorporate by

reference paragraphs 1 through 123 above.

125.  BD&C failed to properly audit and or properly oversee the accounting activities of HMC making it possible for negligence, fraud or other improprieties to occur.

126.  By virtue of BD&C's professional negligence, Plaintiffs have suffered injury and seek damages herein.

**AS AND FOR A FOURTEENTH CAUSE OF ACTION AGAINST DEFENDANTS HMC, MASSIMI, GREBOW, ESSEX-MORGAN LLC, (the HMC DEFENDANTS) JAIME L. MASSIMI f/k/a JAIME ELLIOTT, JAMIE S. MASSIMI, GREGORY MASSIMI, RICHARD MASSIMI, FREDERICK MASSIMI, AMELIA MASSIMI, AND ROBERT GREBOW, FOR CONVERSION**

127.  Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 126 as if set forth verbatim herein and incorporate by reference paragraphs 1 through 126 above.

128.  The referenced Defendants held investment monies belonging to Plaintiffs and in fact wrongfully, intentionally and/or negligently used and converted said funds in their care to their own purposes.

129.  By virtue of said conversion, Plaintiffs have been deprived of their assets and suffered injury and seek damages herein.

**AS AND FOR A FIFTEENTH CAUSE OF ACTION AGAINST DEFENDANTS HMC, MASSIMI, GREBOW, ESSEX-MORGAN LLC (the HMC**

**DEFENDANTS)JAIME L. MASSIMI f/k/a JAIME ELLIOTT, JAMIE S. MASSIMI, GREGORY MASSIMI, RICHARD MASSIMI, FREDERICK MASSIMI, AMELIA MASSIMI,ROBERT GREBOW, FOR UNJUST ENRICHMENT AND CONSTRUCTIVE TRUST**

130. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 129 as if set forth verbatim herein and incorporate by reference paragraphs 1 through 129 above.

131. The referenced Defendants held investment monies belonging to Plaintiffs or were preferentially paid capital withdrawals and fictitious profits that were in fact other innocent investors' capital contributions.

132. The referenced Defendants in fact wrongfully, intentionally and/or negligently used, and received the benefit of said funds entrusted to their care to their own purposes, unjustly enriching them.

133. A constructive trust has arisen by operation of law whereby no equitable title to the assets lies with the referenced defendants, who are obligated to return said assets to their rightful owners.

134. By virtue of said unjust and inequitable enrichment, Plaintiffs have been deprived of their assets and suffered injury and seek all appropriate relief and damages herein.

42

**AS AND FOR A SIXTEENTH CAUSE OF ACTION AGAINST
DEFENDANTS JAIME L. MASSIMI f/k/a JAIME ELLIOTT, JAMIE S.
MASSIMI, GREGORY MASSIMI, RICHARD MASSIMI, FREDERICK
MASSIMI, AMELIA MASSIMI,AND ROBERT GREBOW, FOR FRAUDULENT
CONVEYANCE**

135.    Plaintiffs repeat, reiterate and reallege each
and every allegation contained in paragraphs 1 through 134
as if set forth verbatim herein and incorporate by
reference paragraphs 1 through 134 above.

136.    The referenced Defendants held investment monies
belonging to Plaintiffs or were preferentially paid capital
withdrawals and fictitious profits that were in fact other
innocent investors' capital contributions. Defendant Jaime
L. Massimi and Jamie S. Massimi received transfers of real
property in 2005 from Massimi for less than fair
consideration via a fraudulent conveyance intended to harm
creditors.

137. The referenced Defendants in fact wrongfully,
intentionally and/or negligently used, and received the
benefit of said transfer of properties, in an attempt to
hide assets and deprive rightful owners of these assets and
creditors access to these funds.

43

138. By virtue of said fraudulent transfers, Plaintiffs have been deprived of their assets and suffered injury and seek all appropriate relief and damages herein.

## CLAIM FOR RELIEF

### Nature of the Relief Sought

**WHEREFORE**, the Plaintiffs respectfully request that the Court grant the following relief:

A.      Preliminary Injunctive Relief;

B.      Disgorgement of Converted funds;

C.      Pre-Judgment Attachment of assets of the Relevant Defendants;

D.      Compensatory Damages;

E.      Treble Damages;

F.      Punitive Damages;

G.      Attorneys' fees; and

44

H.        Such other and further and different relief as to
          the Court seems just and proper, including
          punitive damages, costs and attorneys fees.


Dated: January 11, 2007




**MONAGHAN, MONAGHAN, LAMB & MARCHISIO, LLP**


By: _____
          Patrick J. Monaghan, Jr.(PM6297)

          Attorneys for Plaintiff
          150 West 55th St, Suite 1G
          New York, New York 10019
          Ph. (212) 541-6980

          28 W. Grand Avenue
          Montvale, New Jersey 07645
          Ph. (201) 802-9060
          Fax.(201) 802-9066

          and
          SAMMARRO & ZALARICK, PA
          262 Palisade Avenue
          Garfield, New Jersey 07026
          (973) 478-1026 PHONE
          (973)478-0299 FAX

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury of all issues so triable.

MONAGHAN, MONAGHAN LAMB & MARCHISIO, LLP

By: Patrick J. Monaghan, Jr.(PM6297)