**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MITCHELL BERK, et al., | Civil Action No.: 07-181 (JLL) |
| Plaintiffs, | |
| v. | |
| HMC INTERNATIONAL, LLC, et al., | **OPINION** |
| Defendants. | |

**LINARES**, District Judge.

This matter comes before the Court on Plaintiffs' application for a pre-judgment writ of attachment pursuant to Federal Rule of Civil Procedure 64, and a preliminary injunction pursuant to Federal Rule of Civil Procedure 65, brought by way of Order to Show Cause.  The Court has considered the papers submitted, as well as the oral argument of the parties, heard on April 12, 2007.  For the reasons set forth below, Plaintiffs' application is DENIED.

### FACTUAL AND PROCEDURAL BACKGROUND

The HMC International Hedge Fund (hereinafter "the Fund"), originally based out of Montvale, New Jersey,  was created by Defendants Robert Massimi and Grebow in 2002. Plaintiffs were investors in the Fund, which was marketed to them as a pooled investment vehicle engaging in low risk day trading.[1]  Defendant Robert Massimi was the Fund's manager and CEO, and Defendant Bret Grebow was the Fund's trader.  Defendants Robert Massimi and Bret

---

[1]     It should be noted that certain Defendants also allege to have been investors in the HMC Hedge Fund, including Robert Massimi, Gregory Massimi, Richard Massimi, Amelia Massimi, and Frederick Massimi (now deceased).

Grebow were at all times the two principals of HMC International, L.L.C. (hereinafter "HMC"). In September 2005, after certain investors made redemption demands which the Fund was unable to meet, the short-lived Fund collapsed.

In December 2005, the United States Securities and Exchange Commission ("SEC") commenced a civil action in the Southern District of New York, against HMC, Robert Massimi, Bret Grebow, and Jaime L. Massimi (as a relief defendant), alleging violations of the securities laws of the United States. The SEC applied for and obtained a temporary restraining order and an injunction freezing the assets of certain Defendants – including Defendants Robert Massimi and Jaime L. Massimi. By Order dated June 8, 2006 – following a motion to vacate brought by Defendant Robert Massimi – the Honorable Denny Chin released the real property from his prior order freezing same.

On January 16, 2007, the SEC civil action resulted in separate judgments entered in the Southern District of New York. Both judgments provide that Defendants Robert Massimi and Bret Grebow consented to entry of the final judgments "without admitting or denying the allegations of the Complaint." The judgments require Defendant Robert Massimi to disgorge $1,456,152.00, and Defendant Grebow to disgorge $3,105,067.77. The judgments further provide that upon receipt, the Southern District of New York would deposit said funds into an interest bearing account with the Court Registry Investment System. Additionally, the judgments indicate that the SEC may, by motion, propose a plan to distribute the funds pursuant to the Fair Funds provisions of Section 308(a) of the Sarbanes Oxley Act of 2002.

On January 11, 2007, Plaintiffs filed the instant Complaint, alleging claims of fraud under the securities laws of the United States, as well as common law claims of fraud, breach of

2

contract, negligence, breach of fiduciary duty, professional negligence and/or malpractice, conversion, unjust enrichment, and statutory claims pursuant to the New Jersey Consumer Fraud Act, New York's Consumer Fraud Statute, and the New Jersey Fraudulent Conveyance Act.

On February 5, 2007, Plaintiffs moved for a pre-judgment writ of attachment with respect to three New Jersey properties previously and/or currently owned by Robert Massimi, and a preliminary injunction preventing Defendants Robert Massimi, his current wife and ex-wife from transferring their interest in said properties.[2]   The three properties currently at issue are: (1) 28 Holly Road, Upper Saddle River, NJ (hereinafter the "Upper Saddle River Property"); (2) 74 Twilight Road, Bay Head, NJ (hereinafter the "Bay Head Property"); and (3) 110 East Allendale Road, Saddle River, NJ (hereinafter the "Saddle River Property").

## LEGAL DISCUSSION

### I.    Pre-Judgment Attachment

#### A.    Standard

Federal Rule of Civil Procedure 64 ("Seizure of Person or Property"), provides the following:

> At the commencement of and during the course of an action, all
> remedies providing for seizure of person or property for the

---

[2]     Plaintiffs simultaneously moved for (1) expedited discovery pursuant to Federal Rule of Civil Procedure 26, and (2) permission to use an alternative form of service in the event that Plaintiffs were unsuccessful in effectuating service on Defendant Robert Massimi.  With respect to Plaintiffs' request for expedited discovery, the Court advised Plaintiffs' counsel that their request for expedited discovery should be directed to Magistrate Judge Claire C. Cecchi.  An Order to that effect was entered on March 1, 2007. See CM/ECF Docket Entry No. 24. Additionally, Plaintiffs' request to use an alternative form of service became moot on February 21, 2007, when Mr. Eric Chafetz, Esq. made an appearance on behalf of Defendant Robert Massimi. See CM/ECF Docket Entry No. 13.  As a result, the Court will not address the foregoing requests herein.

> purpose of securing satisfaction of the judgment ultimately to be
> entered in the action are available under the circumstances and in
> the manner provided by the law of the state in which the district
> court is held, existing at the time the remedy is sought, subject to
> [certain] qualifications . . . .

Fed. R. Civ. P. 64.  The relevant New Jersey Court Rule governing applications for writs of

attachment is N.J. Ct. R. 4:60-5(a).  This rule provides that a writ of attachment shall issue

where:

> (1) there is a probability that final judgment will be rendered in
> favor of the plaintiff;
> (2) there are statutory grounds for issuance of the writ; and
> (3) there is real or personal property of the defendant at a specific
> location within this State which is subject to attachment.

The Supreme Court of New Jersey has explained that "[t]he writ of attachment is an

extraordinary process, and jurisdiction to issue it must be shown by the party suing out such

writ."  Corbit v. Corbit, 13 A. 178 (N.J. 1888).  "Moreover, the statute and court rules regarding

attachment must be strictly construed."  Wolfson v. Bonello, 637 A.2d 173, 181 (N.J. Super. Ct.

App. Div. 1994) (citing Lundy v. Collitti, 382 A.2d 94, 96 (N.J. Super. Ct. 1977)).  With this

framework in mind, the Court will first address whether Plaintiffs have demonstrated adequate

statutory grounds for issuance of the writ.

    **B.**    <u>**Analysis**</u>

        **1.**    **Statutory Grounds for Issuance**

Plaintiffs rely on two statutory grounds: (1) New Jersey's attachment statute, N.J.S.A. §

2A:26-2; and (2) New Jersey's <u>capias</u> <u>ad</u> <u>respondendum</u> statute, N.J.S.A. § 2A:15-42.

New Jersey's attachment statute, N.J.S.A. § 2A:26-2, provides, in relevant part, as

follows:

> An attachment may issue out of the superior court upon the application of any resident or nonresident plaintiff against the property, real and personal, of any defendant in any of the following instances:
>
> a. Where the facts would entitle plaintiff to an order of arrest before judgment in a civil action . . .  or
>
> b. Where the defendant absconds or is a nonresident of this state, and a summons cannot be served on him in this state . . .  or
>
> c. Where the cause of action existed against a decedent, which survives against his heirs, devisees, executors, administrators or trustees, and there is property in this state which by law is subject to plaintiff's claim . . . or
>
> d. Where plaintiff has a claim of an equitable nature as to which a money judgment is demanded against the defendant, and the defendant absconds or is a nonresident and a summons cannot be served upon him in this state; or
>
> e. Where the defendant is a corporation created by the laws of another state but authorized to do business in this state and such other state authorizes attachments against New Jersey corporations authorized to do business in that state.

N.J.S.A. § 2A:26-2.[3]

Plaintiffs argue that subsections (a), (b) and (d) are applicable. (Pl. Br. at 22).

Nevertheless, Plaintiffs provide absolutely no factual or legal basis on which they believe such

subsections to be applicable to the case at hand. (Id.).  Based upon this Court's review of the

record, the Court determines that subsections (b) and (d) are inapplicable, as Defendant Robert

Massimi has not absconded, and is currently a resident of New Jersey.  Therefore, the Court will

consider whether subsection (a) applies to the facts at hand. See N.J.S.A. § 2A:26-2(a) (stating

---

[3]      N.J.S.A. § 2A:26-1 provides that "[t]his chapter shall be liberally construed, as a remedial law for the protection of resident and nonresident creditors and claimants."

that an attachment may issue where the facts would entitle Plaintiffs to an order of arrest before judgment in a civil action).

Plaintiffs argue that subsection (a) applies since they are entitled to an order of arrest before judgment "because the requirements of N.J.S.A. § 2A:15-42, which call for an arrest or capias ad respondendum are met." (Pl. Br. at 22).  See generally Sentry v. Sky Mgmt., Inc., 34 F. Supp. 2d 900, 904 (D.N.J. 1999) (explaining that the "'civil arrest' procedure known as 'capias ad respondendum' is outlined in N.J.S.A. § 2A:15-41, -42.").  Therefore, the Court will turn to New Jersey's capias ad respondendum statute, N.J.S.A. § 2A:15-42, to determine whether Plaintiffs are entitled to an order of arrest before judgment pursuant to N.J.S.A. § 2A:26-2(a).

New Jersey's capias ad respondendum statute, N.J.S.A. § 2A:15-42, provides, in relevant part, as follows:

> A capias ad respondendum shall issue in an action **founded upon contract**, express or implied, **due to plaintiff from defendant**, only when the proof establishes the particulars specified in one or more of the following subparagraphs:
>
> a. That defendant is about to remove any of his property out of the jurisdiction of the court in which the action is about to be commenced or is then pending with intent to defraud his creditors; or
>
> b. That defendant has property or choses in action which he fraudulently conceals; or
>
> c. That defendant has assigned, removed or disposed of, or is about to assign, remove or dispose of, any of his property with intent to defraud his creditors; or
>
> d. That defendant fraudulently contracted the debt or incurred the demand.
>
> In such a case, the court shall hold the defendant to bail in such an

> amount as is shown by the proof to be due plaintiff from defendant
> except that in actions to recover money from a public officer, the
> amount shall be that which the court thinks proper under the
> circumstances.

N.J.S.A. § 2A:15-42 (emphasis added).  Therefore, in order to obtain a writ of attachment on the

basis set forth by Plaintiffs, Plaintiffs must demonstrate that the requirements of (1) N.J. Ct. R.

4:60-5(a), (2) N.J.S.A. § 2A:26-2, and (3) N.J.S.A. § 2A:15-42 have each been satisfied.

Although Plaintiffs argue that subsections (b), (c), and (d) of N.J.S.A. § 2A:15-42 are

applicable to the case at hand, notably, Plaintiffs fail to explain how they pass the initial hurdle of

demonstrating that this is an "action **founded upon contract**, express or implied, **due to**

**plaintiff from defendant."** N.J.S.A. § 2A:15-42 (emphasis added).  See Pl. Br. at 22-23.

This issue was presented to Plaintiffs' counsel during the April 12, 2007 oral argument.

In response, Plaintiffs' counsel made two arguments: (1) that the requirement of an actual

contract between the parties is "just not the law," and (2) that there may have been an implied

contract due to Plaintiffs from Defendant Robert Massimi. See Tr. (April 12, 2007) at 58:1-8;

61:1-3.  Despite the Court's willingness to entertain Plaintiffs' newly raised arguments,

Plaintiffs' counsel failed to the provide the Court with any legal basis or authority in support of

same.[4]  Furthermore, although Plaintiffs' counsel purported to provide such supplemental

---

[4]     See generally Allied Fin. Corp. v. Steel Panel Sales Corp., 205 A.2d 904, 909 (N.J.
Super. Ct. App. Div. 1964) (rejecting "plaintiff's argument that Willett and Financial can both be
held in on attachment by reason of the 'contract implied in law' for money [he] had and received
as a result of the fraud" and explaining that "[a]ttachment does not lie against a resident
defendant for the tort of fraud and deceit."), cert. denied, 209 A.2d 144 (1965).

authority to the Court by way of letter dated April 13, 2007,[5] said letter did not provide any legal authority for the proposition that there is an "implied" contract existing between Plaintiffs and Defendant Robert Massimi.  To the contrary, the letter raised yet another argument, namely that "the statute does not state that **only** the contracting party may be liable for the fraudulently incurred debt."  See CM/ECF Docket Entry No. 61 (emphasis in original).  Even if the Court were so inclined as to entertain such an argument – despite the fact that it was not raised in Plaintiffs' moving papers or at oral argument – again, Plaintiffs' counsel fails to provide any legal authority in support of Plaintiffs' request that the Court construe the statutory language in such a manner.

As a result, Plaintiffs have failed to demonstrate how the relationship between Plaintiffs and Robert Massimi constitutes an "action founded upon contract, express or implied, due to plaintiff from defendant."  See N.J.S.A. § 2A:15-42.  In failing to do so, Plaintiffs have provided this Court with no reasonable basis on which to find that the first requirement necessary for an order of arrest to issue pursuant to N.J.S.A. § 2A:15-42 has been fulfilled.  Moreover, although Plaintiffs do assert a breach of contract claim in their Complaint, this claim is not asserted against Defendants Robert, Jaime L., or Jamie S. Massimi; rather, the breach of contract claim is only asserted against Defendants HMC and Essex-Morgan LLC. (Compl. at 34, ¶¶ 103-106).[6]  Plaintiffs' deliberate choice in excluding Defendants Robert, Jaime L. and/or Jamie S.

_____

[5]    Although the Court has reviewed Plaintiffs' letter dated April 13, 2007 – believing that it contained supplemental authority on the specific issues raised during oral argument – the Court does not condone the filing of repetitive, unsolicited letters.  Counsel are hereby advised to seek leave of the Court before filing any such unsolicited argumentative communications with the Court in the future.

[6]    The fact that HMC may be a "dry well," as alleged by Plaintiffs' counsel, is immaterial for purposes of the instant application. See Tr. (April 12, 2007) 56:14-15.

Massimi from their breach of contract allegations, suggests to the Court that the relationship between Plaintiffs and the foregoing defendants did not sound in contract. See generally Allied Fin. Corp., 205 A.2d at 909 (N.J. Super. Ct. App. Div. 1964) ("somewhere in plaintiff's proofs [for issuance of a writ of attachment], along with the facts of fraud, is Prima facie indication that it was in a contractual relationship with the defendant."). In fact, Plaintiffs' counsel essentially conceded this point at oral argument, where he stated the following:

> **If you have a contract claim, you might arguably have to deal with a piercing of the corporate veil**, except that **here you have claims of intentional wrongdoing**. They go directly to Mr. Massimi. You don't have to go through the company.

Tr. (April 12, 2007) at 23:23-24:2 (emphasis added).

Accordingly, because Plaintiffs rely on New Jersey's attachment statute, N.J.S.A. § 2A:26-2, and New Jersey's capias ad respondendum statute, N.J.S.A. § 2A:15-42, which, under these circumstances, require an "action **founded upon contract**, express or implied, **due to plaintiff from defendant,"** the Court must deny Plaintiffs' application for a pre-judgment writ of attachment.[7] See, e.g., Allied Fin. Corp., 205 A.2d at 909 (setting aside writ of attachment "insofar as [it] concerns the defendant Willett whose asserted offense against plaintiff is purely fraud and deceit, a tort, and in no sense whatever a contractual default or a default arising out of a contractual relationship between plaintiff and that defendant.").

Accordingly, the Court need not address the remaining factors necessary for issuance of a writ of attachment, namely (1) the probability that a final judgment will be rendered in favor of Plaintiffs, and (2) the existence of real personal property belonging to Defendant Robert Massimi

---

[7]    See N.J.S.A. § 2A:15-42.

at a specific location within the state of New Jersey. See N.J. Ct. R. 4:60-5(a).[8]

---

[8]        Although the Court makes no findings as to (1) the probability that a final judgment will be rendered in favor of Plaintiffs, and (2) the existence of real personal property belonging to Defendant Robert Massimi at a specific location within the state of New Jersey, the Court is nevertheless mindful of several additional weaknesses and/or misconceptions in Plaintiffs' arguments.

        For example, although Plaintiffs' counsel believes that "if we have likelihood of success on any one of the many causes of action, the pre-judgment statute is triggered," Plaintiffs move for the instant writ of attachment and preliminary injunction solely on the basis of their fraudulent conveyance claim.  See Pl. Br. at 24.  Plaintiffs' moving papers do not address – much less purport to state a prima facie claim for – any claims other than the fraudulent conveyance claim. See Pl. Br. at 2-3 ("Table of Contents"). See, e.g., Oburn v. Shapp, 521 F.2d 142, 148 (3d Cir. 1975) (stating that, in the context of a motion for a preliminary injunction, "the burden is on the party seeking relief to make a Prima facie case showing a reasonable probability that it will prevail on the merits.").  As a result, the Court has only considered the probability that final judgment will be rendered in Plaintiffs' favor on the basis of that particular claim.  To the extent that Plaintiffs believe that a conclusory statement indicating that "[i]t is highly likely that Plaintiffs will prevail here" constitutes a legal argument asserting probability that final judgment will be rendered in Plaintiffs' favor on the basis of each claim set forth in the Complaint, Plaintiffs are mistaken. (Pl. Br. at 20).  See, e.g., Luna v. Weiner, No. 05-2298, 2006 WL 1517747, at *1 (D.N.J. May, 23 2006) (disregarding narrative statements in lieu of legal argument).

        Moreover, it appears to the Court that Plaintiffs would only be entitled to a determination as to whether the three properties at issue were fraudulently conveyed by Defendant Robert Massimi if Plaintiffs ultimately succeed on one of their substantive claims, such as the common law fraud claim.  While Plaintiffs apparently attempt to subsume their fraud allegations within their fraudulent conveyance claim, as previously stated, Plaintiffs did not move on the basis of their asserted fraud claim.  As a result, the Court has not been asked to determine the probability that final judgment will be rendered in favor of Plaintiffs on the basis of any such substantive claim.  Cases relied upon by Plaintiffs support the Court's belief that Plaintiffs would need to demonstrate – at the very least –  a probability that final judgment will be rendered in their favor, as to a substantive claim, before the Court may consider setting aside property which has allegedly been fraudulently conveyed.  See, e.g., Firmani v. Firmani, 752 A.2d 854 (N.J. Super. Ct. App. Div. 2000) (setting aside fraudulent transfer of assets from defendant (ex-husband) to his business, **where prior judgment of divorce had been entered against defendant**, which was later uncollectible by plaintiff (his ex-wife) as a result of the fraudulent transfer); ESB, Inc. v. Fischer, 448 A.2d 1030 (N.J. Super. Ch. 1982) (setting aside fraudulent transfer of assets from husband to wife **where $80,000.00 judgment had previously been entered against defendant** (husband) in a separate civil suit which was uncollectible by plaintiff as a result the fraudulent transfer he made to his wife).

II.     **Preliminary Injunction**

A.     <u>Standard</u>

A preliminary injunction is a "drastic and extraordinary remedy that is not to be routinely granted." <u>Intel Corp. v. ULSI Sys. Tech., Inc.</u>, 995 F.2d 1566, 1568 (Fed. Cir.1993). Nonetheless, a trial court's decision to issue a preliminary injunction is discretionary. <u>New Eng. Braiding Co., v. A.W. Chesterton Co.</u>, 970 F.2d 878, 882 (Fed Cir. 1992). The Third Circuit has held that "a district court has the authority to grant injunctive relief in an arbitrable dispute, provided that the traditional prerequisites for such relief are satisfied." <u>Ortho Pharm. Corp. v. Amgen, Inc.</u>, 882 F.2d 806, 812 (3d Cir.1989). The court identified those "traditional prerequisites" as follows: (1) whether the movant has demonstrated reasonable probability of eventual success in the litigation; (2) whether the movant has demonstrated that it will be irreparably injured pendente lite if relief is not granted to prevent a change in the status quo; (3) the possibility of harm to other interested persons from the grant or denial of the injunction; and (4) the public interest. <u>Id.</u> at 812-13. A plaintiff must establish more than a <u>risk</u> of irreparable injury. He must demonstrate "'a clear showing of <u>immediate</u> irreparable injury.'" <u>Hoxworth v. Blinder, Robinson & Co.</u>, 903 F.2d 186, 205 (3d Cir.1990) (quoting <u>ECRI v. McGraw-Hill, Inc.</u>, 809 F.2d 223, 225 (3d Cir. 1987)) (emphasis added). Finally, the Third Circuit has placed particular weight on the probability of irreparable harm and the likelihood of success on the merits, stating: "[W]e cannot sustain a preliminary injunction ordered by the district court where either or both of these prerequisites are absent." <u>Id.</u> at 197 (quoting <u>In re Arthur Treacher's Franchisee Litig.</u>, 689 F.2d 1137, 1143 (3d Cir.1982)); <u>see also</u> <u>Instant Air Freight Co. v. C.F.</u>

11

Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989); Morton v. Beyer, 822 F.2d 364, 367 (3d

Cir.1987); Freixenet, S.A. v. Admiral Wine & Liquor Co., 731 F.2d 148, 151 (3d Cir.1984).

With this framework in mind, the Court will first address the issue of whether Plaintiffs have

demonstrated the existence of any immediate irreparable harm.

    **B.**    **Analysis**

    In assessing whether immediate irreparable harm exists, Plaintiffs must demonstrate that

without the issuance of an injunction, they will suffer harm which cannot be sufficiently

redressed following a trial of the matter. See, e.g., Marsellis-Warner Corp. v. Rabens, 51 F. Supp.

2d 508, 528 (D.N.J. 1999) (citation omitted).  Moreover, the Third Circuit has explained that a

preliminary injunction is an extraordinary remedy; as a result, "[t]he burden lies with the plaintiff

to establish every element in its favor, or the grant of a preliminary injunction is inappropriate."

P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC., 428 F.3d 504, 508

(3d Cir. 2005).  The Court begins its analysis by noting that Plaintiffs failed to address – much

less demonstrate – the existence of immediate irreparable harm in their moving papers.[9]

    As a result of Plaintiffs' failure to address the existence of immediate irreparable harm in

their moving papers, the Court specifically directed Plaintiffs, by way of Order dated March 23,

2007, to address "[t]he existence of immediate irreparable harm in connection with Plaintiffs'

request for a preliminary injunction enjoining the transfer" of the properties at issue.[10] See

---

[9]    In fact, Plaintiffs provide no legal discussion, whatsoever, in connection with their
request for a preliminary injunction in their moving papers. See Pl. Br. at 2-3, Table of Contents.
To the contrary, Plaintiffs' moving papers focus entirely on their request for a writ of attachment.

[10]    Plaintiffs are hereby advised that a moving party may not raise new issues in a reply brief
– or at oral argument – that it should have raised in its initial brief; therefore, courts will

CM/ECF Docket Entry No. 41.  Nevertheless, Plaintiffs once again failed to provide the Court

with any legal discussion, whatsoever, on the issue. (Pl. Reply Br. at 3).  Plaintiffs' counsel was

given a third opportunity to address the existence of immediate irreparable harm during the April

12, 2007 oral argument.  Rather than addressing this issue, Plaintiffs' counsel  advised the Court

– both in the reply brief and during oral argument – that the existence of immediate irreparable

harm is not a requirement for issuance of a writ of attachment. Id.; Tr. (April 12, 2007) at 21:20-

21; 39:10-12.  While Plaintiffs' counsel may be correct, immediate irreparable harm is a

requirement for issuance of a preliminary injunction.[11]

       During the April 12 oral argument, Plaintiffs' counsel also argued – for the first time –

that immediate irreparable harm exists to the extent that issuing a writ of attachment as to the

relevant properties, without a preliminary injunction enjoining Defendants from transferring their

interest in said properties, would essentially "take the teeth out of the attachment." Tr. (April 12,

2007) at 22:6; 39:14-19; 54:19-55:2.  Whether or not the Court agrees with Plaintiffs' counsel is

irrelevant to the Court's instant analysis.  Although the Court recognizes that Plaintiffs are

requesting two related forms of emergent relief, Plaintiffs' counsel has given this Court no legal

---

ordinarily not entertain such newly raised arguments.  See, e.g., Bayer AG v. Schein Parm., 129
F. Supp. 2d 705, 716 (D.N.J. 2001), aff'd 301 F.3d 1306 (3d Cir. 2002) (striking section of reply
brief which raised new issues because opposing party "has no opportunity to respond to newly
minted arguments contained in reply briefs."); Garver v. Garver, No. 96-2507, 1997 WL 47801,
at *6 n. 1 (S.D.N.Y. Feb. 5, 1997) (finding that an argument raised for the first time at oral
argument not was properly before the court).  This Court's willingness to consider certain issues,
including the existence of immediate irreparable harm, was done both as a courtesy to Plaintiffs,
given the nature of their request for emergent relief, and because Defendants had nevertheless
addressed the issue of immediate irreparable harm in their opposition briefs. See R.M. Opp'n Br.
at 27; J.L.M. Opp'n Br. at 14; J.S.M. Opp'n Br. at 11.

[11]       See, e.g., Hoxworth, 903 F.2d at 205.

authority for the proposition that a showing of immediate irreparable harm is not necessary with

respect to Plaintiffs' request for a preliminary injunction under such circumstances.

Plaintiffs' maneuvering around the issue of whether there exists any immediate

irreparable harm not only suggests to the Court that any such immediate irreparable harm is

lacking, but more importantly, it gives the Court no reasonable basis on which to issue a

preliminary injunction at this time.[12] See, e.g.,  Instant Air Freight Co., 882 F.2d at 801 ("In order

to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be

redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be

the only way of protecting the plaintiff from harm."); Frank's GMC Truck Ctr., Inc. v. Gen.

Motors Corp., 847 F.2d 100, 102-03 (3d Cir. 1988) ("since Frank's GMC has failed to articulate

and adduce proof of actual or imminent harm which cannot otherwise be compensated by money

damages, it has failed to sustain its substantial burden of showing irreparable harm.").

Accordingly, Plaintiffs' application for a preliminary injunction is denied on the basis that

Plaintiffs have failed to sustain their burden in demonstrating the existence of any immediate

---

[12]      Perhaps the most persuasive argument made by Plaintiffs' counsel – only in passing –
was that there may be irreparable harm "[i]f there is no money at the end of the day." Tr. (April
12, 2007) 21:6-7. See, e.g., Hoxworth, 903 F.2d at 206 (concluding that "the unsatisfiability of a
money judgment can constitute irreparable injury.").  However, Plaintiffs have failed to elaborate
on and/or substantiate any such claim. See, e.g., Adams v. Freedom Forge Corp., 204 F.3d 475,
488 (3d Cir. 2000) (stating that "speculation cannot support an injunction").  For instance,
Plaintiffs do not allege or present evidence suggesting that there is reason to believe that
Defendants Robert, Jamie S., and Jaime L. Massimi are insolvent, or that a potential money
judgment could not otherwise be satisfied as against the foregoing Defendants.  Furthermore, to
the extent that Plaintiffs' counsel points to the pending sale of the Bay Head Property as evidence
of immediate irreparable harm, Plaintiffs have failed to indicate how that sale, alone, will leave
any money judgment – to which they may ultimately be entitled – unsatisfiable, particularly
where no evidence has been presented suggesting that Defendants have any plans to sell the two
remaining properties at issue, namely the Saddle River and Upper Saddle River Properties. See
Tr. (April 12, 2007) 43:10-17.

irreparable harm at this time.  The Court, therefore, need not engage in an analysis of the

remaining factors necessary for issuance of a preliminary injunction, namely (1) the likelihood of

success on the merits, (2) the balancing of hardships, and (3) the public interest.

## CONCLUSION

Despite the troubling allegations set forth by Plaintiffs, Plaintiffs have given this Court no

basis on which to issue a writ of attachment or a preliminary injunction in connection with the

three properties at issue.  As such, for the reasons stated herein, the Court denies Plaintiffs'

request for same.

An appropriate Order accompanies this Opinion.


DATED: April 23, 2007                              /s/ Jose L. Linares
                                                   JOSE L. LINARES, U.S.D.J.