<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| BERK, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No.: 07-181 (JLL) |
| | ) | |
| v. | ) | |
| | ) | **OPINION** |
| HMC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendant Amelia Massimi's motion to dismiss Counts Seven (for an order of attachment), Fourteen (for conveyance), Fifteen (for unjust enrichment and constructive trust) and Sixteen (for fraudulent conveyance) of Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has considered the submissions made in support of and in opposition to the motion. No oral argument was heard. Fed. R. Civ. P. 78. For the reasons set forth below, Mrs. Massimi's motion is granted in part and denied in part.

**I.    BACKGROUND**

The HMC International Hedge Fund ("the Fund") was created in 2002 by Robert Massimi and Bret Grebow and operated and controlled by them during its existence. (Compl. at ¶¶ 29, 42.) Plaintiffs were investors in the Fund, which was marketed to them as one with a low risk "day

trading strategy" investing in a select group of equities. (Id. at ¶¶ 42, 44.) However, Plaintiffs assert that "there was little or no trading and likewise little or no profit to distribute." (Id. at ¶ 48.) Plaintiffs assert that in reality the Fund was a Ponzi scheme whereby "defendants [Robert] Massimi and [Bret] Grebow enticed new investors to place funds with them . . . [so those funds could be] used . . . to pay themselves and to pay some redemptions and so-called 'profits' to investors lulling them into a false belief that the Fund was genuine." (Id.; see also id. at ¶¶ 57, 59.) During operation of the Fund, Mr. Massimi and Mr. Grebow recruited approximately eighty investors, who invested approximately $12.9 million dollars. (Id. at ¶ 43.) The Fund collapsed in 2005 when it "could no longer meet demands for redemptions." (Id. at ¶ 49.)

Plaintiffs allege that Mr. Massimi and Mr. Grebow alerted family members prior to the collapse so that they could withdraw money from the Fund. (Id. at ¶ 50.) They assert that Defendants, including Mrs. Massimi, Mr. Massimi's mother, "were preferentially paid capital withdrawals and fictitious profits that were in fact other innocent investors' capital contributions." (Id. at ¶ 131.) They further assert that Defendants, including Mrs. Massimi, "wrongfully, intentionally and/or negligently used, and received the benefit of . . . [the] transfer of properties, in an attempt to hide assets and deprive [the] rightful owners of these assets and creditors access to these funds." (Id. at ¶ 137.) Plaintiffs assert that Mrs. Massimi "invested an indeterminate sum and withdrew $25,569.32 in total in 2004 through 2005." (Id. at ¶ 37.)

Based on these allegations, Plaintiffs assert four causes of action against Mrs. Massimi: (1) for an order of attachment on personal and real property (Count Seven); (2) for conversion (Count Fourteen); (3) for unjust enrichment and constructive trust (Count Fifteen); and (4) for fraudulent conveyance (Count Sixteen). Mrs. Massimi presently moves to dismiss these claims.

II. **LEGAL STANDARDS**

On a motion made pursuant to Federal Rule of Civil Procedure 12(b)(6) courts must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party.  See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).  But, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 321 (3d. Cir. 2008).  Thus, "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." Wilkerson, 522 F.3d at 322 (quoting Twombly, 550 U.S. at 556).  Courts are not required to credit bald assertions or legal conclusions draped in the guise of factual allegations.  See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997).  Also, in evaluating a plaintiff's claims under this standard, "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record."  Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

III. **DISCUSSION**

     A. **Count Seven – Order of Attachment**

Plaintiffs' Complaint alleges that the transfers to or withdrawals by Mr. Massimi's family members, including those of Mrs. Massimi, were not for valid consideration.  (Compl. at ¶ 71 (referencing specific transfers to Mr. Massimi's wife and ex-wife, not to other family members).)  Plaintiffs, therefore, argue that "[a]n attachment of the properties pending the litigation of this suit is necessary to preserve these assets for the Plaintiffs who were defrauded . . . ."  (Id.)  They assert that attachment is proper pursuant to New Jersey Statutes §§ 2A:26-2 and 2A:15-42.  (Id. at ¶

102.) Mrs. Massimi, on the other hand, argues that the requirements for attachment in New Jersey are governed by New Jersey Court Rule 4:60-5(a), and that Plaintiffs have not alleged sufficient facts to meet its requirements. This Court agrees.

Federal Rule of Civil Procedure 64 ("Seizure of Person or Property") provides that:

> At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought, subject to [certain] qualifications . . . .

New Jersey Court Rule 4:60-5(a) provides that a writ of attachment shall issue where:

> (1) there is a probability that final judgment will be rendered in favor of the plaintiff;
> (2) there are statutory grounds for issuance of the writ; and
> (3) there is real or personal property of the defendant at a specific location within this State which is subject to attachment.

Attachment is "an extraordinary process." Corbit v. Corbit, 13 A. 178, 178 (N.J. 1888). Thus, "jurisdiction to issue it must be shown by the party suing out such writ," id., and the "rules regarding attachment must be strictly construed," Wolfson v. Bonello, 637 A.2d 173, 181 (N.J. Super. Ct. App. Div. 1994).

Mrs. Massimi argues that neither statutory provision relied on by Plaintiffs provides a ground for attachment under 4:60-5(a) on the facts alleged in the Complaint. Section 2A:26-2, provides, in relevant part:

> An attachment may issue out of the superior court upon the application of any resident or nonresident plaintiff against the property, real and personal, of any defendant in any of the following instances:
> a. Where the facts would entitle plaintiff to an order of arrest before judgment in a civil action . . . or

> b. Where the defendant absconds or is a nonresident of this state, and a summons cannot be served on him in this state . . . or
> c. Where the cause of action existed against a decedent, which survives against his heirs, devisees, executors, administrators or trustees, and there is property in this state which by law is subject to plaintiff's claim . . . or
> d. Where plaintiff has a claim of an equitable nature as to which a money judgment is demanded against the defendant, and the defendant absconds or is a nonresident and a summons cannot be served upon him in this state; or
> e. Where the defendant is a corporation created by the laws of another state but authorized to do business in this state and such other state authorizes attachments against New Jersey corporations authorized to do business in that state.

N.J.S.A. § 2A:26-2. The Complaint alleges that "the facts entitle Plaintiffs to an order of attachment and an order of arrest . . . against *any properties in which the defendants named in this ad damnum clause either owns or has an interest in . . . .*" (Compl. at ¶ 102 (emphasis added).) It also makes specific assertions about transfers to Mr. Massimi's wife and ex-wife. (See id. at ¶¶ 63-71.) But, the Complaint fails to identify which subsections of this statute are applicable specifically to Mrs. Massimi. It states that Mrs. Massimi's residence is unknown (id. at ¶ 37), and the only fact provided relating specifically to Mrs. Massimi is that she withdrew $25,596.32 from the Fund in 2004 and 2005. This is insufficient to demonstrate the applicability of this statute.

Section § 2A:15-42, which is known as the capias ad respondendum statute, provides, in relevant part:

> A capias ad respondendum shall issue in an action founded upon contract, express or implied, due to plaintiff from defendant, only when the proof establishes the particulars specified in one or more of the following subparagraphs:
> a. That defendant is about to remove any of his property out of the jurisdiction of the court in which the action is about to be commenced or is then pending with intent to defraud his creditors; or
> b. That defendant has property or choses in action which he fraudulently conceals; or
> c. That defendant has assigned, removed or disposed of, or is about to assign, remove or dispose of, any of his property with intent to defraud his creditors; or
> d. That defendant fraudulently contracted the debt or incurred the demand.

N.J.S.A. § 2A:15-42.  As this Court stated in Cafaro v. HMC: "In order to obtain a writ of attachment on the basis of the capias ad respondendum statute, the Complaint must, at the very least, allege the existence of a contractual relationship between Plaintiffs and Defendant." No. 07-2793, 2008 U.S. Dist. LEXIS 71724, at * 12 (D.N.J. Sept. 8, 2008) (citing Allied Fin. Corp. v. Steel Panel Sales Corp., 205 A.2d 904, 909 (N.J. Super. Ct. App. Div. 1964)).  Plaintiffs have not alleged that any contractual relationship existed between Mrs. Massimi and Plaintiffs.  Thus, Plaintiffs have also alleged insufficient facts to demonstrate that § 2A:15-42 is an applicable ground for attachment in this case.

Because this Court finds that the requirements for issuance of an order of attachment under New Jersey Court Rule 4:60-5(a) have not been met since Plaintiffs have not asserted any valid statutory ground for attachment, it need not address Mrs. Massimi's alternative argument that an order of attachment is not an independent cause of action.  Count Seven of the Complaint is dismissed without prejudice.

### B.     Count Fourteen – Conversion

The Complaint alleges that Defendants, including Mrs. Massimi, "held investment monies belonging to Plaintiffs and in fact wrongfully, intentionally and/or negligently used and converted said funds in their care to their own purposes," depriving the Plaintiffs of their assets. (Compl. at ¶¶ 128-29.)   In general, the tort of conversion is "the exercise of any act of dominion in denial of another's title to the chattels, or inconsistent with such title."  Mueller v.  Technical Devices Corp., 84 A.2d 620, 623 (N.J. 1951).  Thus, "the essential elements of the common-law action in conversion are: [1] that the property and right to immediate possession thereof belong to the

plaintiff; and [2] the wrongful act of interference with that right by the defendant." Pereira v. United Jersey Bank, N.A., 201 B.R. 644, 675 (S.D.N.Y. 1996) (discussing New Jersey law). But, "[a]n action for conversion will not lie in the context of a mere debt . . . [;] [w]here there is no obligation to return the identical money, but only a relationship of a debtor and creditor, an action for conversion of the funds representing the indebtedness will not lie against the debtor." Advanced Enter. Recycling, Inc. v. Bercaw, 869 A.2d 468, 472 (N.J. Super. Ct. App. Div.2005). Thus,

> [w]hen money, as opposed to tangible property, is the subject of a conversion claim, New Jersey courts require that a plaintiff show something more than a contractual obligation on the part of a defendant to pay the plaintiff to establish conversion. The plaintiff must show that the money in question was identifiably the plaintiffs property or that the defendant was obligated to segregate such money for the plaintiffs benefit."

Cambridge Mgmt. Group, LLC v. Robert A. Kosseff & Assoc., No. 05-3402, 2007 U.S. Dist. LEXIS 51842, at * 10 (D.N.J. July 18, 2007) (internal citations omitted). Finally, for wrongful interference to be demonstrated, a plaintiff must have demand return of his alleged property, and the demand must have been refused by the defendant. See Mueller, 84 A.2d at 623 (noting that "[a] demand and refusal do not of themselves amount to a conversion, but are evidence from which a jury may find that a conversion had been committed").

Plaintiffs assert that the "burden lays with [Mrs. Massimi] to show her entitlement to the funds that she received as disbursements from the [F]und." (Mem. of Law in Opp'n to Amelia Massimi's Mot. to Dismiss Pursuant to Fed. R. Civ. P. Rule 12(b)(6) at 16 [hereinafter "Opp'n Br."].) The Court disagrees. As stated in Cambridge, *Plaintiffs* bear the burden of showing that the property held by Mrs. Massimi is identifiably theirs.

Plaintiffs' Complaint contains the bald assertions that "[t]he transfers by Defendant Robert Massimi shifted the ownership or legal title of his assets to others, and were intended to hide these assets from creditors for little or no consideration" (Compl. at ¶ 70 (asserting a debtor-creditor relationship between Mr. Massimi and Plaintiffs)) and that "Defendants . . . held investment monies belonging to Plaintiffs" (id. at ¶ 128) as well as the fact that Mrs. Massimi withdrew some money from the Fund. The Complaint also states that Mrs. Massimi invested some amount in the Fund. Thus, Plaintiffs have stated insufficient facts to assert a claim that Mrs. Massimi's withdrawals represent property that is identifiably theirs. Also, the Complaint makes no allegation that Plaintiffs made a demand for the return of money from Mrs. Massimi and that the request was refused. Plaintiffs, in their opposition brief, argue that they "have made prior demands for the return of their investments, all of which were ignored." (Opp'n Br. at 16.) Aside from the fact that this assertion was not contained in the Complaint, the support cited by Plaintiffs relates to demands from other Defendants, not Mrs. Massimi. These allegations are insufficient to state a claim for conversion against Mrs. Massimi. Therefore, Count Fourteen is dismissed without prejudice.

      C.    **Count Fifteen – Unjust Enrichment and Constructive Trust**

Plaintiffs argue that "Defendants held investment monies belonging to Plaintiffs or were preferentially paid capital withdrawals and fictitious profits that were in fact other innocent investors' capital contributions," and that "Defendants . . . wrongfully, intentionally and/or negligently used, and received the benefit of said funds entrusted to their care to their own purposes, unjustly enriching them." (Compl. at ¶¶ 131-32).

To state a claim for unjust enrichment, a Plaintiff must establish that the "defendant

received a benefit and that retention of that benefit without payment would be unjust." VRG Corp. v. GKN Realty Corp., 641 A.2d 519, 526 (N.J. 1994). Unjust enrichment is a theory of quasi-contractual liability that requires a direct relationship between the parties. See Callano v. Oakwood Park Homes Corp., 219 A.2d 332, 334-35 (N.J. Super. Ct. App. Div. 1966) ("A plaintiff is not entitled to employ the legal fiction of quasi-contract to substitute one promisor or debtor for another."); Prima v. Darden Restaurants, Inc., 78 F. Supp. 2d 337, 355 (D.N.J. 2000).

Here, Plaintiffs do not allege that they performed or otherwise conferred a benefit on Defendant under a quasi-contractual relationship with the expectation of remuneration. In fact, Plaintiffs have not asserted that any relationship existed between themselves and Mrs. Massimi. As a result, Plaintiffs' claim for unjust enrichment fails to state a claim. Therefore, Count Fifteen is dismissed without prejudice.

### D. Count Sixteen – Fraudulent Conveyance

Plaintiffs allege that Robert Massimi was aware of the true financial situation of the Fund and notified his family members so that they could transfer money out before the collapse "in an attempt to hide assets and deprive rightful owners of these assets and creditors access to these funds." (Compl. at ¶¶ 63-70, 137.) The Uniform Fraudulent Transfer Act ("UFTA"), N.J.S.A. 25:2-20 et seq, governs Plaintiffs' fraudulent conveyance claim. See Gilchinsky v. Nat'l Westminster Bank N.J., 732 A.2d 482, 488-89 (N.J. 1999). The UFTA provides that:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> a. With actual intent to hinder, delay, or defraud any creditor of the debtor; or
> b. Without receiving a reasonably equivalent value in exchange for the

> transfer or obligation, and the debtor:
> (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> (2) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

N.J.S.A. § 25:2-25. "The purpose of the [UFTA] is to prevent a debtor from placing his or her property beyond a creditor's reach . . . [in order to] allow the creditor to undo the wrongful transaction so as to bring the property within the ambit of collection." Gilchinsky, 732 A.2d at 488. Thus, there are two questions that must be answered in evaluating a claim under the UFTA: (1) "whether the debtor [or person making the conveyance] has put some asset beyond the reach of creditors which would have been available to them at some point in time but for the conveyance," and (2) "whether the debtor transferred property with an intent to defraud, delay, or hinder the creditor." Id. at 488-89 (alteration in original; internal quotations omitted). Additionally, in stating a claim under the UFTA, the heightened pleading standard of Rule 9(b) applies. See, e.g., Ford Motor Credit Co. v. Chiorazzo, 529 F. Supp. 2d 535, 538 (D.N.J. 2008).

The Complaint sufficiently pleads a claim for fraudulent conveyance. It alleges that Mr. Massimi orchestrated transfers to numerous family members shortly before the collapse of the Fund, including transfers to Mrs. Massimi, Mr. Massimi's mother. See United Jersey Bank v. Vajda, 690 A.2d 693, 695 (N.J. Super. Ct. App. Div. 1997) ("Transfers made to close relatives are especially suspect."). It also asserts that transfers to or withdrawals by Mrs. Massimi occurred in 2004 to 2005 and totaled $25,569.32. It further asserts that these transfers were orchestrated by Mr. Massimi with the intent to hide the money from the Plaintiffs. Thus, the Complaint alleges fraudulent intent and identifies the approximate time and amount of the transfers to Mrs. Massimi.

These facts are sufficient to place Mrs. Massimi on sufficient notice of the fraudulent conveyance claim asserted against her. See Ford Motor Credit Co., 529 F. Supp. 2d at 539. Therefore, Mrs. Massimi's motion to dismiss Count Sixteen is denied.

**IV.　Conclusion**

Because this Court finds that Plaintiffs have failed to state a claim for an order of attachment (Count Seven), conversion (Count Fourteen), and unjust enrichment and constructive trust (Count Fifteen), this Court grants Mrs. Massimi's motion to dismiss on those counts without prejudice to Plaintiffs to amend their Complaint to correct any deficiencies. Additionally, because this Court finds that Plaintiffs have adequately stated a claim for fraudulent conveyance (Count Sixteen), Mrs. Massimi's motion to dismiss this count is denied. An appropriate Order accompanies this Opinion.

DATED: February 23, 2009　　　　　　/s/ Jose L. Linares
　　　　　　　　　　　　　　　　　　JOSE L. LINARES
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE